# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| Terrance M. Richard, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:10-CV-375 JVB |
| | ) | |
| Michael J. Astrue, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff seeks appellate review of Defendant's denial of his claim for Supplemental Security Income and Disability Insurance Benefits. Plaintiff applied for those benefits in November 2007, alleging disability from heart valve and arterial-bypass surgery in August 2007. In February 2010, Plaintiff had a hearing before Administrative Law Judge ("ALJ") Jose Anglada via video teleconference. The next month, the ALJ issued a decision finding the Plaintiff was able to perform a significant number of regional jobs, and therefore was not disabled under the Social Security Act. The Social Security Appeals Council denied Plaintiff's request for review in July 2010, rendering the ALJ's decision as the final decision of the Social Security Commissioner. Plaintiff then filed this appeal, arguing that the Commissioner failed to adhere to the "treating physician" rule, and that the Commissioner did not properly account for Plaintiff's low IQ when assessing his ability to work.

## A. Standard of Review

This Court has authority to review Social Security Act claim decisions under 42 U.S.C. § 405(g). The Court will uphold an ALJ's decision if it is reached under the proper legal standard and is supported by substantial evidence. *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). The Court will not decide facts anew, reweigh the evidence, or substitute its own judgment to decide whether a claimant is or is not disabled. *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). The Commissioner's decision must be upheld if there is substantial evidence to support it, even if substantial evidence would support an opposite conclusion. *Farrell v. Sullivan*, 878 F.2d 985, 990 (7th Cir. 1989).

## B. Statement of Facts

### (1) *Plaintiff's Life Activities*

Plaintiff graduated high school and attended one year of technical college, where he states he was a "B" and "C" student. (Record at 629.) He worked nearly ten years as a dishwasher in a restaurant, a job that routinely required lifting over fifty pounds. (DE 17 at 2.) He worked at the restaurant full-time until his heart surgery in early 2007, and then returned to work part-time following several months of recovery. *Id.* In 2009, the restaurant fired Plaintiff for his suspected involvement in a newspaper stand break-in. (*Id.* at 2–3.)

At home, Plaintiff lives with his girlfriend of eleven years. He cooks meals for himself and her, takes care of the apartment, vacuums, shops for groceries, and takes out the garbage. (*Id.* at 4.) His recreation includes occasional reading, watching television, and going to the movies with his girlfriend. (*Id.* at 4–5.)

**(2)** *Heart Disease and Treatment*

Plaintiff has a history of coronary heart disease. In 1999, he underwent surgery performed to repair a mitral valve defect. (DE 14 at 5.) The mitral valve allows normal blood-flow through the heart, and leakage in the mitral valve can cause fatigue and shortness of breath.[1] In 2007, he began exhibiting heart-related symptoms again, and had a second mitral valve surgery. *Id*. He continued to suffer from chest pain and irregular heartbeat. *Id*. Plaintiff's physicians then implanted a pacemaker to address these symptoms in April 2008. *Id*. Plaintiff continued to complain of chest pain and shortness of breath on exertion. *Id*. In September 2008, Plaintiff performed a cardiolite stress test, which showed no evidence of ischemia or infarction[2], but produced chest pain during chemically-simulated exertion. *Id.* Additional testing in 2009 showed no further need for surgical intervention.

**(3)** *Mental Health and Ability*

Plaintiff underwent mental health treatment, including counseling and medication, for depression and brief hallucinations from September 2008 to April 2009. (Record at 597–641.) Plaintiff underwent a mental status examination and intelligence test in April 2009. (*Id*. at 634–36.) The test diagnosed him with mixed anxiety-and-depressive disorder, and his psychiatrist recommended further treatment. (*Id*. at 640.) His intelligence test also showed his overall intellectual function to be "borderline," with weakness in attention and concentration, mental processing speed, verbal conceptual reasoning, and factual knowledge. (*Id*. at 635–36.)

---

[1] Mayo Clinic, *Mitral Valve Regurgitation*, http://www.mayoclinic.com/health/mitral-valve-regurgitation/DS00421 (Last visited August 1, 2011).

[2] Blockage of blood flow to the heart can starve heart muscle cells of oxygen, causing less efficient pumping (ischemia) or death of blood cells (infarction). *See* Mayo Clinic, *Myocardial Ischemia*, http://www.mayoclinic.com/health/myocardial-ischemia/DS01179 (Last visited August 1, 2011).

**(4)** *Other Physicians' Assessments*

A consultative physician, Dr. Smejkal, examined Plaintiff in February 2008. He found Plaintiff's heart rhythm to be normal and noted that Plaintiff complained of chest pain during exertion. (Record at 496.) He did not make a recommendation regarding Plaintiff's ability to work.

The state agency physician, Dr. Harish Shaw, examined Plaintiff's record in April 2008. He assessed that Plaintiff could operate hand or foot controls without restriction, occasionally lift twenty pounds, frequently lift ten pounds, and stand or sit with normal breaks for six hours per eight hour workday. (*Id.* at 508.) Further, Dr. Shaw identified some environmental restrictions, and assessed Plaintiff needed to avoid concentrated exposure to extreme heat or cold, vibrations, hazards, and large magnetic fields. (*Id.* at 511.) He determined that Plaintiff's claims were "partially credible," in that medical evidence supported the Plaintiff's stated symptoms but not their severity or degree of impairment. (*Id.* at 512.)

**(5)** *Treating Physicians' Assessments*

In November 2009, Plaintiff's treating cardiologist, Dr. Sehgal, reported that Plaintiff cannot work prolonged hours, cannot lift more than ten pounds, and cannot do repetitive motions for more than five-to-ten minutes. (DE 14 at 6–7.) He cited a history of heart surgery, continuing chest pains during exertion, and shortness of breath. (*Id.* at 6.) Plaintiff's primary care physician, Dr. Kumar, offered a similar assessment, concluding that Plaintiff was homebound and could not stand for more than five minutes, do repetitive movements, or lift more than ten pounds. (*Id.* at 7.) He also cited a history of heart surgery, chest pain during exertion, shortness of breath, and irregular heart rhythm. *Id.*

**(6)** *Vocational Expert's Assessment*

During Plaintiff's hearing before the ALJ, a vocational expert testified that there were over 77,000 light, unskilled, regional jobs Plaintiff could perform with his education and work experience. (Record at 65–66.) The state agency physician's physical restrictions of standing or walking for six hours, lifting twenty pounds occasionally and ten pounds frequently, and unrestricted operation of hand or foot controls would allow Plaintiff to perform these light, unskilled positions. (*Id*. at 63.) With Plaintiff's primary care physician's recommendations of standing no more than five minutes, lifting no more than ten pounds, and performing no repetitive moments, the vocational expert testified Plaintiff could perform around 10,000 regional, sedentary jobs. (*Id*. at 65–66.) The expert testified that borderline intellectual functioning, particularly in reading and writing, could bar Plaintiff from some of those sedentary positions. (*Id*. at 67)

**(7)** *ALJ's Decision*

The ALJ concluded that the Social Security Act insured Plaintiff, that Plaintiff performed no gainful activity since the onset of the alleged disability, and that Plaintiff had severe medical impairments from his heart condition. (Record at 13.) The ALJ also found that Plaintiff has mild impairment from his borderline intellectual functioning, but did not classify it as severe. (*Id*. at 17.) The ALJ concluded that Plaintiff's impairments did not medically equal any in the Listing of Impairments. *Id*. On the basis of medical test results, non-treating physician findings, and Plaintiff's testimony of his life activities, the ALJ accorded the treating physicians' opinions minimal weight. (*Id*. at 19–20.) The ALJ further determined that Plaintiff's claims of impairment intensity, persistence, and limiting effects were not credible. *Id*. The ALJ determined Plaintiff

could occasionally carry twenty pounds, frequently carry ten pounds, could stand or sit for six hours in an eight hour workday, and must avoid magnetic fields. (*Id*. at 19.) As these limitations still allowed performance of significant numbers of regional jobs, the ALJ determined the Plaintiff was not disabled under the Social Security Act. (*Id*. at 22)

**C. Substantial Evidence Supports the ALJ's Conclusion that Plaintiff Is Not Disabled According to Social Security Standards.**

**(1)** *Substantial evidence supports the ALJ's conclusions regarding Plaintiff's heart related impairments.*

Plaintiff contends that the ALJ improperly gave his treating physicians' opinions regarding his heart conditions minimal weight. He maintains that his treating physicians assessed him with much greater heart related impairment, and the ALJ did not factor these into his determination of residual work ability. He argues that this circuit's case law requires, at minimum, the treating physicians' opinions be given more weight due to the extent of the doctor-patient relationship. Defendant asserts the ALJ correctly gave the treating physicians' opinions minimal weight, as substantial medical evidence contradicted their severe assessments. Furthermore, they maintain that substantial evidence supports the ALJ's conclusion that Plaintiff is able to perform numerous jobs present in the region.

Objective tests showed that, following treatment, Plaintiff's heart performance was grossly normal. The state agency, consultative, and treating physicians all found similar symptoms associated with Plaintiff's heart condition: chest pain, shortness of breath with exertion, and reliance on a pacemaker. The difference in their assessments hinges on the symptoms' severity and related impairments. Plaintiff's primary-care physician gave the most severe assessment, indicating that Plaintiff may not stand for more than 5 minutes, lift more than

6

ten pounds, and may not perform repetitive motions. The State agency physician's assessment is the most optimistic, stating that Plaintiff may stand or sit for 6 hours per workday, lift ten pounds frequently and twenty pounds occasionally, and operate foot or hand controls without restriction. Plaintiff himself testified that for over a year after the disabling surgery, he worked fifteen hours a week as a restaurant dishwasher and routinely lifted over fifty pounds.

The Court finds that substantial evidence supports the ALJ's findings and no reversible error is raised. When well-supported evidence exists that contradicts a medial opinion, the opinion no longer controls and becomes one more piece of evidence the ALJ must weigh. *Holfsien v. Barnhart*, 439 F.3d 375, 376–77 (7th Cir. 2006). Once an ALJ decides how much weight to give a medical opinion, he must minimally articulate his reasons for crediting or rejecting evidence of a disability. *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).

Here, the ALJ articulated the inconsistency of the treating physician's assessment with diagnostic test results and Plaintiff's own testimony of substantial daily activity. As such, the ALJ was not required to give the treating physicians opinions controlling weight, and could find them inconsistent with the record and accord them minimal weight. Therefore, the ALJ did not improperly give the treating physicians' opinions minimal weight as a matter of law. Further, Plaintiff's job history and social activities form substantial evidence to support the ALJ's findings regarding Plaintiff's heart-related impairments. As such, the Court finds no reversible error.

**(2)** ***Substantial evidence supports the ALJ's assessment of Plaintiff's mental ability and its impact on his residual functional capacity.***

Plaintiff argues that the ALJ improperly regarded his borderline intellectual functioning as a mild impairment. He cites case law outside this circuit that mandates a full disability

analysis be performed if borderline intellectual functioning is identified. Plaintiff argues the ALJ's analysis of his mental impairment as mild is in error. Further, Plaintiff claims the vocational expert said that Plaintiff's mental impairment would preclude him from performing all the regional jobs he could physically perform with his work experience and education.

Defendant argues that the ALJ's classification of Plaintiff's mental impairment as mild is immaterial. Defendant asserts that the severe impairment classification is merely a threshold issue to screen *prima facie* cases of disability, and the next analysis step requires evaluating all impairments – severe and minor – to determine residual functional capacity. Defendant highlights that the ALJ properly analyzed Plaintiff's mental state under the four required areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of de-compensation. Defendant asserts the ALJ found only a mild impairment under the "concentration, persistence or pace" area, requiring a rating of "not severe" under C.F.R §404.1520a(d)(1). Since Plaintiff did not challenge those findings, Defendant maintains that the ALJ's mental-impairment analysis properly factored Plaintiff's mental ability and there is no reversible error. Furthermore, Defendant counters that the vocational expert said job exclusion on the basis of Plaintiff's mental state would depend on the degree of impairment, falling short of Plaintiff's claim of total preclusion. Defendant maintains no evidence is present that Plaintiff's mental state prevents 85% task-concentration or interferes with reading comprehension.

Disability analysis contains five steps. 20 C.F.R. § 404.1520(a)(4)(i). To rate a person as disabled, the claimant must: (1) Not engage in gainful activity; (2) Have a severe impairment; (3) Have impairments that medically equal one in the Listing of Impairments for twelve months; (4) Be unable to perform prior work; and (5) Be unable to perform any other work. Here, the ALJ

found Plaintiff not disabled at step three of the analysis. The ALJ also considered Plaintiff's mental capacity in analyzing ability to perform other work. Plaintiff's argument that his mental ability is a severe impairment is moot, as the ALJ found Plaintiff's heart condition to be a severe impairment. After identifying a severe impairment, the ALJ then factored Plaintiff's mental condition when determining if all of Plaintiff's impairments — severe and otherwise — medically equaled a Listing and his ability to perform other work. Plaintiff's post-secondary education, substantial employment history, mental health record, and social activities all provide substantial evidence supporting the ALJ's determination of a mild mental impairment. Furthermore, the Court will not re-weigh evidence regarding the availability of jobs Plaintiff can mentally perform. The vocational expert testified there are numerous sedentary, unskilled jobs present in the local economy and did not state Plaintiff's mental state entirely precluded their performance. The ALJ had substantial evidence for his determination, and the Court finds no error.

**D. CONCLUSION**

The Court finds the ALJ relied on substantial evidence that supports his decision regarding Plaintiff's residual functional capacity and ability to perform other work. The ALJ did not err as a matter of law in weighing physician credibility or analyzing Plaintiff's mental capacity. As such, there is no reversible error, and the Court affirms the ALJ's decision

SO ORDERED on August 4, 2011.

  s/ Joseph S. Van Bokkelen_____

JOSEPH S. VAN BOKKELEN

UNITED STATES DISTRICT JUDGE